# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**TERRY L. THOMAS,**

      **Plaintiff,**

v.                                            Civil Action No. 5:11cv7
                                                      (Judge Stamp)

**NORTHERN CORRECTIONAL FACILITY,
JAMES RUBENSTEIN, EVELYN SEIFERT,
KAREN PSZCZOLOWSKI, GREGORY YAHNKA,
LT. EDWARD LITTELL, NICKY SEIFERT, LT.
NASH, PRIME CARE MEDICAL, REGIONAL JAIL
AUTHORITY AND CECELIA JANISZEWSKI,**

      **Defendants.**

## OPINION/REPORT AND RECOMMENDATION ON THE
## PLAINTIFF'S COMPLAINT AND MOTION TO AMEND

### I. Procedural History

The *pro se* plaintiff initiated this civil rights action on January 10, 2011. [Dckt. 1] On January 27, 2011, he filed his a court-approved complaint form. [Dckt. 7] On February 7, 2011, the plaintiff was granted permission to proceed as a pauper, and he has since paid his initial partial filing fee.

On May 9, 2011, the plaintiff filed a motion to amend his complaint to add additional defendants. [Dckt. 35]

This case is before the undersigned for an initial review and Report and Recommendation pursuant to 28 U.S.C.§§ 1915(e) and 1915A and LR PL P 2.

### I. The Plaintiff's Contentions

**A.  The Complaint**

In the complaint, the plaintiff asserts that the conditions at the Northern Correctional Facility ("NCF") are so deplorable and unsanitary as to constitute a violation of his constitutional rights. In

support of this claim, the plaintiff asserts the following grounds:

(1) There is no adequate dining area - inmates are required to eat meals in their housing units which also serve as the passive recreation area, and has a poor ventilation systems which filters dust and other contaminants onto the food trays and drinking cups.

(2) Inadequate and unsanitary serving of food - food trays are not strapped down which allows the food to spill down the sides of the trays and cross contaminate one another, and smash and ruin food on other trays. The trays are also dirty and often contain foreign particles, such as metal shavings and hairs. In addition, because the food carts are old and unheated, the food is usually lukewarm or cold. The inmates who prepare and distribute the food are not properly clothed, and many have infectious diseases such as Hepatitis B and C. Furthermore, inmates who work in the kitchen are required to report to work even when sick.

(3) Inadequate food - the food served is not nutritionally adequate as inmates are denied fresh fruits, salads are wilted and never chilled, and food is never properly heated. Moreover, "chicken scratch" is added to all sauces and gravies, and is substituted for real meat. The food served is highly processed and contains high levels of cholesterol, fat and additives which are unhealthy, and have caused high cholesterol levels, obesity and other ailments among the inmates.

(4) Television - in a memo dated May 30, 2001, a policy was created at the NCF which allows only one TV at a time to be hooked up in a cell, even in a double-bunked cell. However, inmates at the Mt. Olive Correctional Complex are allegedly allowed to have two TVs in a double-bunk cell. Moreover, as of February 4, 2010, inmates at the NCF are prohibited from having on the main cell light or the TV between the hours of 12:00 a.m. and 6:00 a.m.

(5) Constant illumination - although inmates are prohibited from using all electrical appliances, and from having their main cell light on from 12:00 a.m. to 6:00 a.m., there are "night lights" which stay on all day and all night. At NCF, inmates do not have the option of turning the lights off like inmates do at Mt. Olive. This situation prevents the plaintiff from "entering into a psychological peace of mind," called REM or deep sleep, which the plaintiff asserts is "intolerable" and "torturous," and causes him headaches. Further, by not allowing him to use the main cell light after midnight, the plaintiff asserts he is denied access to his legal work at night.

(6) Inadequate plumbing - the NCF has a problem with sewage drainage and back flush.

(7) Inadequate ventilation - the NCF has no intake vents inside the cells which causes "stale air." There is air coming into the cell but only a small fan to push it out. Therefore, there is no recirculation of air inside the plaintiff's cell. Moreover, the ventilation system is covered in dust which can cause various diseases to spread throughout the facility.

(8) Denial of passive recreation - the plaintiff has a hernia which prevents him from going outside and from double-celling, so he has been placed in the "C2" unit.[1] Although he has broken no rules, the plaintiff alleges that he has been denied passive recreation because passive recreation is not allowed in the C2 unit. The plaintiff has attempted to receive a single cell through the medical department but he has not been successful. Thus, he believes he should be allowed passive recreation while he is housed in the C2 unit.

(9) Protective custody/mainline commingling - at NCF, general population inmates are put together with protective custody inmates which the plaintiff alleges presents a substantial risk of violence.

(10) Medical - dental is charging the plaintiff $60.00 to realign dentures he received while incarcerated at a Regional Jail Facility. He does not believe he should have to pay this charge but has been unable to resolve the issue with medical. Moreover, medical staff should have arranged to have his hernia corrected and allowed him to have passive recreation while in C2 unit.

(11) Unsanitary conditions - in the C3 housing unit, chemicals are stored in a mesh, metal cabinet which has no ventilation, exhaust or intake fans. Items such as germicides, Windex, and toilet bowl cleaner are kept in this cabinet with other products like toilet paper and paper towels. Mops, brooms and dust mops hang in the same cabinet with shower hoses, brooms and cleaning buckets.

(12) Assault by staff member - this claim relates to plaintiff Bobby Roddy who was dismissed from this case by Order [dckt. 14] of the Court on February 2, 2011.

(13) Medical - this claim relates to plaintiff Bobby Roddy who was dismissed from this case as noted above.

As relief, the plaintiff seeks compensatory and punitive damages, as well as, an Order directing the NCF to correct all unsanitary conditions and install a proper dining hall, do away with the constant illumination, provide inmates with proper nutrition, and to give the inmates back the proper law library.

**B.   The Plaintiff's Motion to Amend**

In his motion to amend defendants, the plaintiff requests permission to add new claims and new defendants to his case. In support of this motion, the plaintiff asserts that on the day this case

---

[1] It appears that the C2 unit is punitive segregation housing.

was filed, he went to the medical unit complaining of painful lumps under both arms. The plaintiff was immediately taken to a medical cell by a nurse and placed under "coritean."[2] He was later told it was believed he had contracted MRSA.[3] The plaintiff was kept in the medical unit for eight days.

On March 28, 2011, the plaintiff was called to medical and kept overnight. The next day, he was sent out for a hernia operation. Due to some complications with his surgery, the plaintiff was kept at the outside hospital for a few days.

Upon his arrival back at the NCF, the plaintiff was placed in a medical cell. The plaintiff asserts that inmates in the medical unit are "not allowed anything." While in the medical unit, the plaintiff complains that his religious diet was not honored.[4]

As the Associate Warden of Security, the plaintiff asserts that Richard Lohr ("Lohr") makes the policies for inmates housed in the medical unit. Thus, the plaintiff wishes to add Lohr as a defendant in this action for denying him any and all privileges while housed in the medical unit, and for failing to correct certain conditions in the medical unit, such as cold meals and inadequate cleaning supplies.

In addition, the plaintiff seeks to add a claim against defendant Yahnke for failing to honor his religious diet while in the medical unit. Similarly, the plaintiff seeks to add Jane and John Doe defendants in food service for failing to prepare his religious diet.

Next, the plaintiff contends the conditions in the kitchens at NCF are not sanitary and that

---

[2]The Court believes the plaintiff means "quarantine."

[3]Methicillin-resistant Staphylococcus aureus (MRSA) is an infection that is highly resistant to antibiotics. It often begins with a painful skin boil and is spread by skin-to-skin contact. See www.mayoclinic.com.

[4]The plaintiff asserts he is a Hare Krishna.

4

staff seems to know when the facility will be inspected by the Health Department. The plaintiff would like to add Mark Uraco and other Jane and John Doe defendants from the Health Department for failing to find the various health violations mentioned and report them.

Finally, the plaintiff seeks to add another claim against defendant Yahnke for failing to allow the Krishna's to send the plaintiff a food supplement package. Yahnke allegedly told the plaintiff that he would need to speak to the Chaplin, which the plaintiff did on April 27, 2011. The Chaplin advised the plaintiff that he could not receive the package, even though the facility allows the general population to order food from outside restaurants.

### III.  Analysis

**A.  The Complaint**

    **1.  Northern Correctional Facility and the Regional Jail Authority**

"Claims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit." Brooks v. Pembroke City Jail, 722 F.Supp. 1294, 1301 (E.D.N.C.1989); see also Will v. Michigan Dept. Of State Police, 491 U.S. 58, 71 (1989) ("Neither a State nor its officials acting in their official capacities are 'persons' under § 1983"); Preval v. Reno, 203 F.3d 821 (4th Cir. 2000)(unpublished) ("[T]he Piedmont Regional Jail is not a 'person,' and therefore not amenable to suit under §42 U.S.C. 1983"); Roach v. Burch, 825 F. Supp. 116 (N.D.W.Va. 1993) (The West Virginia Regional Jail Authority is "in effect the State of West Virginia" and is not a person under § 1983). Accordingly, the Northern Correctional Facility and the Regional Jail Authority are not proper parties to this suit and should be dismissed.

    **2.  Claims Related to Former Plaintiff Bobby Roddy**

On February 2, 2011, the undersigned found that multi-prisoner plaintiffs could not proceed

together *in forma pauperis*. [Dckt. 14 at 3] Moreover, the Court took judicial notice of case number 1:11cv7 wherein Mr. Roddy had already filed a separate action on his own behalf which raised the same claims as the instant case. *Id.* at 3-4. Accordingly, Mr. Roddy was removed as a plaintiff in this case.

Because Mr. Roddy is no longer a party to this action, and has a separate case pending which raises the same or similar claims, those claims relating solely to Mr. Roddy must be dismissed from this case. As noted above claims 12 and 13 as structured herein, relate solely to Mr. Roddy. Accordingly, those claims -- assault by staff member and medical -- must be dismissed from this case.

### 3. Lieutenant Nash

Because Lt. Nash was named as a defendant solely with respect to Mr. Roddy's claim of assault by a staff member, and that claim has been dismissed, Lt. Nash is not a proper defendant to this case and should be dismissed.

### 4. Nicky Seifert and Jim Rubenstein

Liability under § 1983 is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir.2001)(internal citation omitted). Therefore, in order to establish liability, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for a violation of a constitutional right in a Bivens case. Rizzo v. Good, 423 U.S.

362 (1976).

  (a) Nicky Seifert

In his complaint, the plaintiff does not allege that defendant Nicky Seifert had any personal involvement in the alleged violations of his constitutional rights. Without such personal involvement, the plaintiff cannot maintain this action against that defendant. Accordingly, defendant Nicky Seifert should be dismissed as a defendant in this action.

  (b) Jim Rubenstein

In his complaint, the plaintiff asserts that defendant Rubenstein is liable in his individual capacity simply because he is the Commissioner of the West Virginia Division of Corrections ("WVDOC"). He does not assert that defendant Rubenstein personally acted in any way to violate his rights. Thus, it is clear that the plaintiff has named defendant Rubenstein only in a supervisory or official capacity.

As noted above, however, *respondeat superior* cannot form the basis for liability under § 1983. Nonetheless, in Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990), the Fourth Circuit recognized that "[s]upervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of *respondeat superior*, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." *Id.* Therefore, the Court found that supervisory defendants may be liable under § 1983 in certain situations. Moreover, to establish such supervisory liability, the plaintiff must show that the supervisor's failure to take corrective action amounts to deliberate indifference or the tacit authorization of the offensive practice. *Id.*

In this case, the plaintiff has not provided any evidence that defendant Rubenstein has tacitly

authorized the conditions he complains of, or that Rubenstein has been deliberately indifferent to such conditions. In fact, the plaintiff has not even established that defendant Rubenstein is even personally aware of the alleged conditions. At best, the plaintiff asserts that the defendant should have knowledge of these conditions in his official capacity as the Director of the WVDOC, and that he has the authority in that capacity, to make the necessary changes.

However, official capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citation and quotations omitted). Therefore, suits against state officials in their official capacities should be treated as suits against the state. *Id.* at 166. In order for the governmental entity to be a proper party of interest, the entity's policy or custom must have played a part in the violation. *Id.* (citing Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 (1978)). The plaintiff here fails to assert that a policy or custom of the WVDOC has played a part in the alleged violation of his constitutional rights. In fact, such an argument would undermine the plaintiff's equal protection claims. Accordingly, the plaintiff cannot maintain this case against defendant Rubenstein, and that defendant should be dismissed from this action.

### 5. **Prime Care Medical**

Prime Care Medical is a private corporation that provides medical services to inmates in the WVDOC. Therefore, it appears Prime Care is a state actor for purposes of § 1983. See West v. Atkins, 487 U.S. 42, 54 (1988) (holding a private entity which contracts with the state to provide medical services acts "under color of state law.") However, a corporation cannot be held liable in a § 1983 action for the acts of its employees under the doctrine of *respondeat superior*. See Monell v. Dep't of Social Services, 436 U.S. at 691-92. "According to the Fourth Circuit Court of Appeals,

'a private corporation [which is a state actor] is liable under § 1983 only when an official policy or custom of the corporation causes the alleged deprivation of federal rights.'" Page v. Kirby, 314 F.Supp.2d 619, 622 (N.D.W.Va. 2004) (quoting Austin v. Paramount Parks, Inc., 195 F.3d 715, 728 (4th Cir. 1999)). Here, the plaintiff has not made any allegations that a policy or custom held by Prime Care Medical lead to any alleged deprivation of his constitutional rights. Therefore, the plaintiff has failed to state a claim against Prime Care Medical and that defendant should be dismissed.

### 6. **Plaintiff's Medical Claim related to his Dentures and $60.00 Charge**

In the complaint, the plaintiff complains that he is being charged $60.00 to have his dentures realigned and that defendant Janiszewski has failed to help him resolve this issue. However, the plaintiff has failed to explain how requiring him to pay for certain medical services, whether listed in the Medical Policy Directive or not, violates his constitutional rights. The plaintiff does not assert that he was denied dental care, or that the care he received was inadequate, only that he is being required to pay for it. The Court notes that inmates are routinely required to pay for services they receive in prison, including, but not limited to, food, clothing, copies, prescriptions, and certain medical services. Thus, his claim with regard to the $60.00 dental charge, and defendant Janiszewski's failure to help him resolve that issue, should be dismissed.

### 7. **The Plaintiff's Equal Protection Claim**

In grounds four and five, as structured herein, the plaintiff complains that inmates at the NCF are treated differently than inmates at the Mt. Olive Correctional Center. The Court construes this as an equal protection claim.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall

… deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, §1. To be successful on an equal protection claim, the plaintiff must demonstrate "that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F. 3d 648, 654 (4th Cir. 2001). If the plaintiff makes such showing, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Id.*

Here, the plaintiff has failed to show that he was treated differently from others with whom he was similarly situated[5] or that his treatment was a result of intentional or purposeful discrimination. In addition, the plaintiff has failed to show that he is a member of suspect class. Thus, the plaintiff fails to state an equal protection claim and that claim must be dismissed with prejudice.

**8. Access to His Legal Work**

In ground five as structured herein, the plaintiff asserts that the NCF's policy which prohibits him from having his main cell light on between the hours of 12:00 a.m. and 6:00 a.m. prevents him from accessing his legal work at night. It is not clear if the plaintiff is attempting to allege that this policy denies him access to the courts or violates some of other right. In any event, the plaintiff's claim fails.

It is well-established that prisoners have a constitutional right of access to the courts. See Bounds v. Smith, 430 U.S. 817, 821 (1977). However, it is equally well-established that "[l]awful

---

[5] Although inmates at the NCF and at Mt. Olive are all inmates within the care, custody and control of the WVDOC, they are not necessarily "similarly situated." Each facility has its own security issues, resource issues, building limitations, staff limitations, and budgetary constraints, among other things. Therefore, even though each facility must follow certain policies and procedures of the WVDOC, it is not likely that each facility is capable of providing the same, or even similar, amenities and programs to it's inmates.

incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Price v. Johnston, 334 U.S. 266, 285 (1948).

In this case, the undersigned fails to see how a "lights out" policy in effect from midnight to 6:00 a.m. denies a prisoner his right to access the courts, even if it technically prevents him from accessing his legal work during those hours. In addition, the memorandum by the Warden putting this policy into effect explains that it is being done to conserve energy, and presumably, costs. [Dckt. 7 at Ex. A] The policy was not put into place to prevent inmates from accessing their legal work, is limited in scope and duration, and is being done at a time which is generally most convenient to do so – while most inmates sleep. Moreover, the policy allows an exception and inmates may use electrical appliances during that time if they first obtain permission from the Officer-in-Charge. *Id.* Further, the plaintiff has not alleged that he has suffered any actual injury as a result of this policy, or that he does not otherwise have plenty of time to access his legal work when electric light is either not needed or permitted. Accordingly, this grounds should be denied.

**9. The Remaining Claims**

As to the plaintiff's remaining claims of unsanitary conditions at the NCF, the undersigned has reviewed those claims and finds that summary dismissal is not warranted as to those claims at this time. Therefore, as to grounds one, two, three, six, seven and eleven, as structured herein, the undersigned believes that the defendants should be made to answer those claims.

As to ground five, the undersigned has recommended that his equal protection claim and access to his legal work claim be dismissed. The only allegation therefore remaining in ground five is the plaintiff's claim that having constant illumination is torturous and causes him headaches.

Upon a review of that ground, the undersigned finds that summary dismissal is not warranted at this time, and that the defendants should be made to answer that claim.

As to grounds eight and nine, the undersigned has reviewed those claims and does not believe summary dismissal of those claims is warranted at this time. Thus, the defendants should be made to answer those claims.

As to the plaintiff's remaining medical claim that he did not receive appropriate care for his hernia condition, found in ground ten as structured herein, the undersigned finds that summary dismissal of that claim is also not warranted at this time, and that the defendants should be made to answer that claim.

**B.  The Plaintiff's Motion to Amend**

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure,

> A party may amend the party's pleadings once as a matter of course at any time before a responsive pleading is served, or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

In this instance, a responsive pleading has not yet been served and the plaintiff generally has the right to amend his pleadings as a matter of course. However, a review of the motion shows that the plaintiff seeks to add claims and defendants based on acts committed after this case was filed and that are not related to the underlying claims in the complaint. Therefore, it is clear that the plaintiff could not have exhausted these issues prior to filing this complaint. Additionally, it is not appropriate for the plaintiff to amend his complaint with claims that occurred after the filing of this case, and that are not related to the underlying issues raised in the complaint. Thus, the undersigned recommends

that the plaintiff's Motion to Amend [dckt. 35] be denied.[6]

### IV. Recommendation

For the reasons stated, the undersigned makes the following recommendations:

(1) the following defendants be **DISMISSED**

    (a) Northern Correctional Facility,
    (b) Regional Jail Authority,
    (c) Lt. Nash,
    (d) Nicky Seifert,
    (e) Jim Rubenstein, and
    (f) Prime Care Medical;

(2) Ground 4 as structured herein, be **DISMISSED;**

(3) Plaintiff's equal protection claim and denial of access to courts claim as found in ground 5 as structured herein, be **DISMISSED**;

(4) Plaintiff's denial of access to his legal work claim found in ground 5 as structured herein, be **DISMISSED**;

(5) Plaintiff's medical claim with regard to his dental issue in ground 10 as structured herein be **DISMISSED;**

(6) Grounds 12 and 13 as structured herein, and related to dismissed plaintiff Bobby Roddy, be **DISMISSED;**

(7) The plaintiff's remaining grounds 1, 2, 3, 6, 7, 8, 9 and 11 as structured herein, **PROCEED;**

(8) The plaintiff's remaining claim in ground 5 as structured herein, **PROCEED**;

(9) The plaintiff's remaining claim in ground 10 as structured herein, and related to the treatment of his hernia, **PROCEED;**

(10) The Clerk **issue** twenty-one (21) day summonses for the remaining defendants, Evelyn Seifert, Karen Pszczolowski, Gregory Yahnka, Lt. Edward Littell and Cecelia Janiszewski, and **forward** a copy of the summonses and a copy of the complaint to the United States

---

[6]The plaintiff may pursue those claims in a separate action, after he has exhausted his administrative remedies.

Marshal Service for service of process; and

(11) The plaintiff's Motion to Amend [dckt. 35] be **DENIED**.

Within **fourteen (14) days** after being served with a copy of this Opinion/Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket.

DATED: May 19, 2011.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE