```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

TERRY L. THOMAS,

    Plaintiff,

v.                                      Civil Action No. 5:11CV7
                                                            (STAMP)

NORTHERN CORRECTIONAL FACILITY,
JAMES RUBENSTEIN, EVELYN SEIFERT,
KAREN PSZCZOLOWSKI, GREGORY YAHNKA,
LT. EDWARD LITTELL, NICKY SEIFERT,
LT. NASH, PRIME CARE MEDICAL,
REGIONAL JAIL AUTHORITY and
CECELIA JANISZEWSKI,

    Defendants.

**MEMORANDUM OPINION AND ORDER
AFFIRMING AND ADOPTING REPORT AND
RECOMMENDATION OF MAGISTRATE JUDGE AND
DENYING SECOND MOTION TO AMEND AND
MOTION TO APPOINT A MONITOR**

I.  Procedural History

On January 10, 2011, the pro se[1] plaintiff, Terry Thomas, initiated this action in this Court by filing a civil rights complaint under 42 U.S.C. § 1983. Pursuant to Local Rule of Prisoner Litigation Procedure 2, it was then referred to United States Magistrate Judge John S. Kaull for initial review and report and recommendation.

After the plaintiff filed an amended complaint in proper form, Magistrate Judge Kaull granted his motion to proceed without payment of fees. The magistrate judge also dismissed a second pro

---

[1] "Pro se" describes a person who represents himself in a court proceeding without the assistance of a lawyer. Black's Law Dictionary 1341 (9th ed. 2009).

se plaintiff, Bobby Roddy, who had been added to the case when the plaintiff filed his amended complaint. The magistrate judge found that multi-prisoner plaintiffs could not proceed together in forma pauperis.[2] Following this dismissal, the plaintiff filed a motion to amend his amended complaint to add new claims and defendants.

After review of the plaintiff's amended complaint and motion to amend his amended complaint, the magistrate judge entered a report and recommendation which recommended that this Court dismiss multiple claims and defendants, allow other claims and defendants to proceed, and deny the motion to amend.

The magistrate judge informed the parties that if they objected to any portion of the report and recommendation, they were required to file written objections within fourteen days after being served with copies of the report. The plaintiff filed objections to many of the magistrate judge's recommendations.

## II. Facts

The plaintiff is currently incarcerated at the Northern Correctional Facility in Moundsville, West Virginia. In his complaint, he makes ten separate claims of allegedly unsanitary and unconstitutional conditions at the Northern Correctional Facility. The claims are as follows:

1. The Northern Correctional Facility has inadequate dining facilities, and the inmates are required to eat in the housing unit

---

[2] In forma pauperis refers to the filing status as a "pauper," or "indigent who is permitted to disregard filing fees and court costs." Black's Law Dictionary 849 (9th ed. 2009).

which is also used as the passive recreation area.  The location of this eating area is close to the upper tier, and dust and dirt falls onto inmates' food while they eat as a result of people walking on the upper tier.

      2.   Food is served in an unsanitary fashion.  The trays are not tied down and food spills over the sides causing cross-contamination.  The trays are not handled in a sanitary manner, causing them to get dirt and other contaminates on them and the food.  The food is served at the incorrect temperatures because the food carts are old and unheated and the food sits too long before it is served, and the kitchen workers are not provided with proper clothing while preparing food and are forced to report to work even when they are sick.

      3.   The food served is nutritionally inadequate.  Fresh fruits are not served, salads are wilted, and main courses are not served at proper temperatures.  Further, the plaintiff maintains that "chicken scratch" is put into all sauces and the foods contain highly processed meats which are high in cholesterol.

      4.   The double cells at the Northern Correctional Facility are only permitted to have a single television.  The plaintiff argues that inmates at the Mt. Olive Correctional Complex are permitted to have two televisions in double-bunk cells.  Further, the plaintiff says that his equal protection rights as well as his rights to access to his legal work are being deprived by a "lights

out" time where cell lights and televisions must be turned off between the hours of 12:00 a.m. and 6:00 a.m.

5. Despite the policy that inmates cannot use televisions or cell lights between 12:00 a.m. and 6:00 a.m., "night lights" remain illuminated throughout that entire time. The plaintiff argues that this disrupts his deep sleep, which he contends is "torturous." The plaintiff also asserts that inmates at the Mt. Olive Correctional Complex are permitted to turn off "night lights," but inmates at the Northern Correctional Facility are not.

6. When an inmate flushes that toilet in his cell, there is a problem with back flush and sewage drainage such that the toilet is actually flushed into the cell next to that inmate's cell.

7. The ventilation in the cells at the Northern Correctional Facility is insufficient and while air comes into the cells, there is insufficient "intake to remove stale air from the cells." This allegedly causes dust and dirt problems which are detrimental to the plaintiff's health.

8. The defendants have denied the plaintiff passive recreation while he has been housed in C2, which is a punitive segregation housing unit. The plaintiff argues that he has been placed in this unit due to a hernia which prevents him from going outside and from keeping a cell mate. However, he argues that although he is not housed here for punitive reasons, he is subject to the rules of the unit which prohibit passive recreation. He believes that because he is in C2 for medical reasons and has been

unable to obtain a single cell through the medical department, he should be exempt from the ban on passive recreation.

9. General population inmates are placed together with protective custody inmates and the plaintiff believes that this presents a substantial risk of violence.

10. Chemicals are stored in a mesh, metal cabinet with no ventilation, exhaust or intake fans. All types of cleaning products are kept in this cabinet, and mops, brooms and dust mops hang in the same cabinet with shower hoses, brooms and cleaning buckets.

The plaintiff is also making a claim based upon his medical care at Northern Correctional Facility (Claim 11). That claim is that the plaintiff is currently being charged $60.00 to realign dentures he received while incarcerated at a Regional Jail Facility. He believes that he should not be required to pay more than $5.00 for this procedure. Further, he argues that his hernia has been inadequately addressed. Finally, two claims (Claims 12 and 13) relate to former plaintiff Bobby Roddy only.

The plaintiff's motion to amend alleges that the plaintiff went to the medical unit on the day that this case was filed to complain about painful lumps under both arms. The plaintiff was allegedly then taken to a medical cell and later diagnosed with having contracted MRSA. The plaintiff argues that he was kept in the medical unit for eight days, and was called back to medical on March 28, 2011 and kept overnight. The next day he was sent for a

5

hernia operation. During his convalescence from the surgery, he contends that he was kept in a medical cell and that inmates in the medical unit are "not allowed anything" and that his religious diet[3] was ignored. The plaintiff seeks to add claims and defendants as a result of these incidents.

### III. Applicable Law

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court must conduct a de novo review of any portion of the magistrate judge's recommendation to which objection is timely made. Because the petitioner filed objections to the report and recommendation, all of the Magistrate Judge's recommendations to which the plaintiff objected will be reviewed de novo. All findings and recommendations to which objections were not raised will be upheld unless they are "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A).

### IV. Discussion

While this Court reviews the recommendation of the magistrate judge de novo, in order to maintain consistency, this Court will review each of the magistrate judge's recommendations in the order in which he made them in his report.

A.   The Complaint

   1.   Northern Correctional Facility and Regional Jail
        Authority

Initially, Magistrate Judge Kaull recommends that this Court dismiss defendants the Northern Correctional Facility and the

---

[3]The plaintiff claims to be a hare krishna

Regional Jail Authority as improper defendants to a § 1983 action. He found that case law is clear that only "persons" are subject to suit under § 1983, and that "the jail is not a person amenable to suit." Brooks v. Pembroke City Jail, 722 F. Supp. 1294, 1301 (E.D.N.C. 1989). This Court agrees, and thus must affirm the recommendation of the magistrate judge in this regard. The plaintiff objected to this recommendation, arguing that he did not intend to actually name the entities as defendants, but had intended to discover who was in charge of the entities, and name them individually. Essentially, he argues that he intended to use the names of the Northern Correctional Facility and the Regional Jail Authority as John Doe placeholders until such time that he could discern who was in charge.

This argument does not change the fact that these entities are named as defendants and are not amenable to suit. If the plaintiff intended to name the heads of these entities individually when the names of these individuals were discovered, the plaintiff was clearly aware of the availability of "John Doe" as a placeholder, as he discusses it in his objections. The names of the facilities are not proper placeholders for the individuals who head the entities. Thus, these defendants are dismissed.

    2.   <u>Claims Related to Former Plaintiff Bobby Roddy</u>

As outlined above, Magistrate Judge Kaull previously dismissed plaintiff Bobby Roddy as an improper party to this civil action. As a result, any and all claims and defendants which relate only to

claims of Bobby Roddy must be dismissed as well. As such, the claims for "assault by a staff member" and "medical," which refer only to an alleged assault against Bobby Roddy and alleged failure to adequately address Bobby Roddy's medical needs, must be dismissed. Defendant Lieutenant Nash, who is only implicated of wrongdoing by the "assault by a staff member" claim, must likewise be dismissed.

### 3. Nicky Seifert and Jim Rubenstein

The magistrate judge recommends that defendants Nicky Seifert and Jim Rubenstein also be dismissed because the plaintiff has failed to allege any personal involvement with the allegations made in the complaint on the part of these defendants. In order to be subject to liability in a § 1983 suit, an individual must have been "personal[ly]" involved in the constitutional violation by way of his or her own acts or omissions. Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001) (internal citations omitted). Thus, liability based upon respondeat superior, or vicarious liability for the acts and omissions of others only, cannot provide the basis for liability under § 1983. Rizzo v. Good, 423 U.S. 362 (1976).

With regard to defendant Nicky Seifert, Magistrate Judge Kaull found that the plaintiff failed to allege any personal involvement in the alleged constitutional violations whatsoever. This Court comes to the same conclusion. The plaintiff has not named Nicky Seifert in his complaint whatsoever except within the initial caption in order to include this defendant in the case. The

8

plaintiff does not contest this recommendation. Thus, defendant Nicky Seifert must be, and is, dismissed.

Further, as the magistrate judge points out, defendant Rubenstein is alleged to be liable solely due to this position as Commissioner of the West Virginia Division of Corrections. The plaintiff does not point to a single act or omission done personally by defendant Rubenstein which violated the plaintiff's constitutional rights. While it is true that individuals can be liable under § 1983 when they, in their supervisory capacity, fail to act to correct constitutional violations of which they are aware, such liability must come from a deliberate indifference to or tacit authorization of these violations. Miltier v. Beorn, 896 F. 2d 848, 854 (4th Cir. 1990).

Deliberate indifference requires that the supervisor defendant not only be aware of the situation or condition of which the plaintiff complains, but that he subjectively "know[] of [its severity] and disregard[]" it. Farmer v. Brennan, 511 U.S. 825, 837. In order to possess this level of culpability, "the official must be aware of facts from which the inference could be drawn that a [constitutional violation] exists, and he must also draw that inference." Id.

This Court agrees with the magistrate judge that the plaintiff has failed to allege any facts which could support a conclusion that defendant Rubenstein possessed such culpability regarding the conditions of which the defendant complains in the instant action.

Not only is there no allegation that defendant Rubenstein personally believed the conditions to be sufficiently severe as to violate inmates' constitutional rights, but there is not even an allegation that he was aware of the conditions at all. The plaintiff simply alleges that he "should have" been aware of them. In objection to this conclusion, the plaintiff argues that defendant Rubenstein is aware of the conditions because he answered the plaintiff's grievances and received notice of this claim, and that he is responsible for the facility, so he had to know about the conditions.

However, even this response fails to allege facts which support an inference that defendant Rubenstein believed the conditions to be severe enough to constitute a constitutional violation. See id. at 837-844 (if prison official does not subjectively assess the situation to rise to the level of a constitutional infraction, liability for deliberate indifference cannot attach). Additionally, any wrongdoing that is alleged by the plaintiff in his objections with regard to policies at the Northern Correctional Facility which could be attributable to defendant Rubenstein fall within an exercise of judgment and discretion reasonably employed within the scope of his official duties. Thus, this Court agrees that defendant Rubenstein must be dismissed.

4.  <u>Prime Care Medical</u>

This Court further agrees that defendant Prime Care Medical must be dismissed as an improper party to this action because the plaintiff has not alleged that any policy or "corporate action" of this defendant has led to a constitutional violation.  Under § 1983, a private corporation which contracts with the government to provide services can be held liable for constitutional violations.  <u>West v. Atkins</u>, 487 U.S. 42, 54 (1988).  However, this liability can only be in the same capacity as individual liability in that <u>respondeat superior</u> liability cannot serve as the basis, but only individual actions on the part of the company.  <u>See</u> <u>Monell v. New York City Dep't of Social Services</u>, 436 U.S. 658, 691-92 (1978).  Thus, a corporation cannot be held liable for any wrongdoing of its employees, but only for "official policy or custom of the corporation [which] causes the alleged deprivation of federal rights."  <u>Page v. Kirby</u>, 314 F. Supp. 2d 619, 622 (N.D. W. Va. 2004).

Here, the plaintiff has not alleged any policy or custom of Prime Care Medical which has served to deprive him of his constitutional rights.  The plaintiff further has not objected to the magistrate judge's recommendation that Prime Care Medical be dismissed.  This Court also agrees that no claim has been asserted against this defendant and thus dismisses Prime Care Medical.

> 5. <u>Plaintiff's Medical Claim Related to His Dentures and $60.00 Charge</u>

This claim relates to the plaintiff's allegation that he was required to pay $60.00 to have his dentures realigned at the Northern Correctional Facility. This claim also alleges that defendant Janiszewski has failed to help him correct this bill despite his requests for help.

The plaintiff does not allege that he was deprived of necessary medical care because of this charge or that the care that he received was inadequate, only that he should not be required to pay for medical care. The plaintiff claims that billing him $60.00 for this service is against West Virginia Code § 25-1-8. However, even if this is true, this would not lead to liability in this action. This is because a § 1983 action "must be founded upon a violation of constitutional rights." <u>Arcoren v. Peters</u>, 829 F.2d 671, 676 (8th Cir. 1987). Free (or $5.00) medical care while in prison is not a constitutionally protected right granted to inmates. The alleged violation of this section of the West Virginia Code does not equate to a constitutional violation.

The plaintiff also claims that if inmates are unable to pay the $60.00 bill, they are denied dental care. However, the plaintiff does not allege that he himself was denied dental care as result of an inability to pay the bill. Litigants in federal court do not have standing to assert violations of the constitutional rights of others. This claim does not allege a

12

violation of the plaintiff's own constitutional rights, and must be dismissed.

      6.   <u>Plaintiff's Equal Protection Claims</u>

The magistrate judge construed Claims 4 and 5,[4] which contend that inmates at the Northern Correctional Facility are treated less favorably than inmates at the Mt. Olive Correctional Complex,[5] as equal protection claims. In order to maintain a viable cause of action under the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must show that "he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." <u>Morrison v. Garraghty</u>, 239 F. 3d 648, 654 (4th Cir. 2001).

After <u>de novo</u> review, this Court agrees that this plaintiff has failed to meet this burden. First, there is no factual allegation made that the inmates at the Mt. Olive Correctional Complex are similarly situated to the plaintiff himself or to any

---

[4] As delineated herein.

[5] Claim 4 alleges that inmates at the Mt. Olive Correctional Complex are permitted to have two televisions in their cells when there are two inmates in a single cell while the Northern Correctional Facility mandates that only one television is permitted per cell, regardless of the number of inmates housed there. It also alleges that inmates at the Mt. Olive Correctional Complex are permitted to use cell lights and televisions at night, while the Northern Correctional Facility has a "lights out" period from 12:00 a.m. until 6:00 a.m. Claim 5 alleges that inmates at the Mt. Olive Correctional Complex are allowed to turn off the "night lights" at night, while inmates at the Northern Correctional Facility are subjected to constant illumination and are not permitted to turn "night lights" off.

of the inmates at the Northern Correctional Facility.[6]  Secondly, there is no factual allegation that any disparity in treatment was the result of intentional discrimination against the inmates at the Northern Correctional Facility versus the inmates at the Mt. Olive Correctional Complex.  Finally, the plaintiff has failed to allege that the inmates at the Northern Correctional Facility are a suspect class.

The plaintiff requests that these claims not be dismissed until he has been afforded more time for discovery.  However, the plaintiff's allegations fail to raise sufficient factual support for these claims to allow discovery on these matters.  Thus, the equal protection claims must be dismissed.

### 7. Access to His Legal Work

Claim 4 also argues that the Northern Correctional Facility's policy that lights be out in cells between 12:00 a.m. and 6:00 a.m. infringes on his constitutional rights because the policy denies him access to his legal work during that time.  The magistrate judge found that, while there is a constitutional right of access to the courts, that right must be viewed with an eye to the equally well established concept that "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our

---

[6]As noted by the magistrate judge, simply because the Mt. Olive Correctional Complex inmates and the Northern Correctional Facility inmates are all West Virginia Department of Corrections prisoners does not mean that they are similarly situated for purposes of these claims.

14

penal system." Price v. Johnston, 334 U.S. 266, 285 (1948).  The magistrate judge then reasonably weighed these two concepts and found that, as a matter of law, the "lights out" policy at the Northern Correctional Facility did not unreasonably infringe upon the plaintiff's access to the courts, especially because the policy allows for exceptions to be made with approval from the Officer-in-Charge.

The plaintiff did not object to the magistrate judge's recommendation with regard to this claim, thus this Court reviews it for abuse of discretion.  This Court finds no such abuse, and affirms the magistrate judge's recommendation to dismiss this claim.

### 8. The Remaining Claims

Magistrate Judge Kaull found that summary dismissal is not warranted as to the remaining claims not previously dismissed by this memorandum opinion and order. No objections to this recommendation has been received, and this Court finds no clear error in the magistrate judge's recommendations as to these claims. Thus, Claims 1, 2, 3, 6, 7, 8, 9, and 10 as well as the allegations which remain in Claims 5 and 11[7] remain in this civil action, and the remaining defendants are directed to answer these claims.

---

[7]In Claim 5, the allegations that constant illumination is "torturous" and disrupts the plaintiff's sleep, giving him headaches, remains.  In Claim 11, the allegation that the plaintiff's hernia was not adequately addressed remains.

9.   <u>Motion to Amend</u>

This Court agrees that ordinarily, at this point in litigation, the plaintiff would have a right to amend his complaint as a matter of course. However, this Court also agrees that the allegations which the plaintiff intends to add occurred following the filing of this complaint. Thus, as a matter of law, the plaintiff could not have exhausted administrative remedies as to these events before the filing of his complaint. Further, this Court also agrees, after <u>de novo</u> review, that the incidents sought to be added are unrelated to the allegations in the original complaint and thus are inappropriate as additions to this complaint. Thus, the motion to amend must be denied.

10.   <u>Second Motion to Amend and Motion to Appoint a Monitor</u>

Following the magistrate judge's report and recommendation, the plaintiff filed a second motion to amend seeking to add as a defendant Darlene D. Carnochan, Casualty Specialist III, spokesman for Chartis Insurance Company, which insures the West Virginia Division of Corrections. The plaintiff attached a letter which he received from Ms. Carnochan advising him that the defendants in this case were represented by Thomas Buck. However, the plaintiff asserts no claim against Ms. Carnochan, nor does he explain why he believes that she should be a named defendant in this case. Thus, this motion is denied.

Finally, the plaintiff also filed a motion to "apoint (sic) a Monitor and or inspector to look into the alligations (sic) that

16

the Plaintiff has presented to the Court." ECF No. 50 *1. This Court does not have the power to grant the plaintiff the relief that he requests in this motion. The allegations of the plaintiff's complaint which remain following this memorandum opinion and order will proceed and this Court will decide them through the litigation process. This motion is denied.

V. Conclusion

For the reasons described above, the report and recommendation of the magistrate judge is AFFIRMED and ADOPTED in its entirety. Accordingly, defendants Northern Correctional Facility, Regional Jail Authority, Lieutenant Nash, Nicky Seifert, Jim Rubenstein and Prime Care Medical are DISMISSED. Claim 4 as structured herein is DISMISSED in its entirety. Plaintiff's equal protection claims and denial of access to courts/access to legal work claims are DISMISSED. Plaintiff's medical claim regarding his dental issue is DISMISSED. Claims 12 and 13 as delineated herein are DISMISSED. The plaintiff's remaining claims, Claims 1, 2, 3, 6, 7, 8, 9, and 10, as structured herein PROCEED. The remaining allegations in Claims 5 and 11 PROCEED. The plaintiff's motion to amend (ECF No. 35) is DENIED. Finally, the plaintiff's second motion to amend and motion to appoint a monitor (ECF Nos. 49 and 50) are DENIED. The remaining defendants are instructed to respond to the claims which remain. The Clerk is DIRECTED to issue twenty-one day summonses for the remaining defendants, Evelyn Seifert, Karen Pszczolowski, Gregory Yahnka, Lieutenant Edward Littell, and Cecelia Janiszewski,

and forward a copy of the summonses and a copy of the complaint to the United States Marshals Service for service of process.

IT IS SO ORDERED.

The Clerk is directed to transmit a copy of this order to the pro se plaintiff by certified mail and to counsel of record herein.

DATED:    March 14, 2012


                              /s/ Frederick P. Stamp, Jr.
                              FREDERICK P. STAMP, JR.
                              UNITED STATES DISTRICT JUDGE