IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**TERRY L. THOMAS,**

  **Plaintiff,**

 v.              CIVIL ACTION NO. 5:11cv7
                  (Judge Stamp)

**LT. EDWARD LITTELL,**
**EVELYN SEIFERT,**
**KAREN PSZCZOLOWSKI,**
**GREGORY YAHNKA, and**
**CECELIA JANISZEWSKI**

  **Defendants.**

## REPORT AND RECOMMENDATION

### I. Procedural History

On January 10, 2011, the *pro se* plaintiff, Terry L. Thomas, initiated this case by filing a complaint under 42 U.S.C. § 1983. (Doc. 1) On January 27, 2011, the plaintiff filed an amended complaint, among other changes, adding Bobby E. Roddy as a second plaintiff. (Doc. 7) On February 1, 2011, the undersigned dismissed Roddy as a plaintiff in this action, finding multi-prisoner plaintiff's cannot proceed *in forma pauperis* in a single action. (Doc. 13)

On May 9, 2011, the plaintiff filed a motion to amend his complaint to add new claims and defendants. (Doc. 35) The undersigned conducted a preliminary review of the file and recommended the Court dismiss multiple claims and defendants, allow other claims and defendants to proceed, and deny the plaintiff's motion to amend. (Doc. 36) That report and recommendation was adopted by the Honorable Frederick P. Stamp, United States District Judge, on March 14, 2012. (Doc. 68)

On April 11, 2012, the defendants, Edward Littell, Karen Pszczolowski, Evelyn Seifert, and

1

Gregory Yahnka (collectively "the NCF" defendants) filed a motion to dismiss the plaintiff's amended complaint. (Doc. 73) On the same date, defendant Cecelia Janiszewski filed a separate motion to dismiss and alternative motion for summary judgment. [Doc. 74] On April 17, 2012, a Roseboro notice was issued to the plaintiff. (Doc. 76) The plaintiff filed a response opposing the NCF defendants motion to dismiss on May 7, 2012. (Doc. 89) The plaintiff also filed a response opposing defendant Janiszewski's motion to dismiss and alternative motion for summary judgement on June 25, 2012. [Doc. 93] On June 28, 2012, defendant Janiszewski filed a reply to the plaintiff's opposition to her motion to dismiss and for summary judgment. (Doc. 94)

## II. The Pleadings

### A. The Amended Pleading

In his complaint, the plaintiff states multiple claims alleging unsanitary and unlivable conditions at the Northern Correctional Facility. The plaintiff asserts the following:[1]

1. The Northern Correctional Facility requires inmates to eat in the housing unit, which doubles as the passive recreation area. Due to the poor ventilation system, dust and dirt fall from an upper tier of the unit onto inmates' food.

2. Food served at the Northern Correctional Facility is unsanitary. Food trays are not tied down, causing cross-contamination when food spills onto other trays. The food is also served at incorrect temperatures because the food carts are old and unheated. Additionally, kitchen workers are not provided with proper clothing while serving food.

---

[1] Originally, the plaintiff submitted thirteen separate claims against the defendants. However, the District Court has dismissed three claims, (Doc. 68, p. 17) following the undersigned's first report and recommendation. (Doc. 36) Therefore, the undersigned will only address the ten claims that were permitted to proceed by the District Court.

3. Food served at the Northern Correctional Facility is unhealthy, inadequate, and not fresh. Fresh fruits are not provided, salads are wilted and never chilled, chicken scratch is present in all sauces, and processed turkey is substituted as real beef. Further, these processed meats are high in cholesterol causing obesity and various other health problems.

4. Although inmates cannot use electrical appliances or cell lights during the hours of 12:00 a.m. and 6:00 a.m., a night lights remains illuminated twenty-four hours a day in the plaintiff's cell. The plaintiff is unable to turn the light off. Consequently, the night light prevents the plaintiff from sleeping, causing headaches and psychological discomfort.[2]

5. Cell toilets have sewage drainage and back flush problems. When an inmate flushes the toilet in his cell, the toilet flushes into the toilet of the neighboring cell before finally draining.

6. The cell ventilation system is inadequate and dangerous. Although air does come into the cell, the ventilation fans are unable to properly recirculate the air, causing stale dormant air to remain in the inmate's cell. This dormant air could potentially cause health problems as well as the spread of disease.

7. The plaintiff has been denied passive recreation while housed in C2, a punitive segregation housing unit at the Northern Correctional Facility. The plaintiff was housed in C2 because he suffers

---

[2] In Claim Four, the defendant also raised an equal protection claim, claiming Mt. Olive Correctional Complex permits inmates to turn off their night lights while inmates at the Northern Correctional Facility may not. The District Court dismissed this section of the complaint, holding the disparity in treatment is not the result of intentional discrimination. Additionally, the plaintiff failed to allege the inmates of the Northern Correctional Facility were a suspect class, thus failing to show an equal protection violation. (Doc. 68, p. 13-14) The District Court also dismissed the claim that the "lights out" policy unreasonably infringed upon the plaintiff's access to the courts. The plaintiff did not appeal this section of the magistrate judge's report and recommendation. (Doc. 36) Because the Court did not find abuse of discretion, the Court affirmed the magistrate judge's recommendation.

from a hernia which prevents him walking outside for any long period of time. Because the plaintiff is housed in C2 for medical, and not punitive reasons, the plaintiff should be permitted passive recreation time as is permitted in all other housing units.

8. The Northern Correctional Facility is placing general population inmates alongside protective custody inmates. Plaintiff contends this will create a substantial risk of violence.

9. Chemicals are stored in inadequate mesh metal cabinets with no exhaust or intake fans. Items such as toilet paper and paper towels are stored together with shower hoses, brooms, cleaning mops, buckets, and various cleaning products.

10. The plaintiff's hernia was not addressed by the defendants.[3]

As relief, the plaintiff requests the Northern Correctional Facility to conduct various reforms of its facilities and practices including: the installation of a new dining hall, providing healthier food, forcing all food preparation staff to wear appropriate and sanitary clothing, correct sewage issues, remove cell night lights, and improve the law library. For monetary damages, the plaintiff seeks one million ($1,000,000.00) dollars from each listed defendant.

**B. The NCF Defendants' Motion to Dismiss**

The defendants' assert that the plaintiff has not experienced an Eight Amendment violation related to cruel and unusual punishment. Accordingly, the defendants' argue that the plaintiff's complaint should be dismissed following Rule 12(b)(6) of the Federal Rules of Procedure for failing

---

[3] In Claim Ten, the plaintiff raised additional claims concerning a medical bill for dentures, among other expenses. (Doc. 7, p. 18) In a previous report and recommendation, the undersigned recommended that the plaintiff's medical claim with regard to his dental issue be dismissed. (Doc. 36, p. 13) The plaintiff did not appeal this section of the magistrate judge's report and recommendation. (Id). Because the Court did not find abuse of discretion, the Court affirmed the magistrate judge's recommendation.

to state a claim. In their motion, the defendants' contend:

1. The plaintiff is afforded an adequate dining area

2. Food service workers at the Northern Correctional Facility comply with safety standards. Additionally, the plaintiff has failed to file any grievance at the Northern Correctional Facility nor do messy food trays rise to the level of a constitutional violation.

3. Food served to inmates at the Northern Correctional Facility meets proper guidelines. Moreover, food can only give rise to a constitutional violation if the food is unfit for human consumption.

4. The night light does not rise to the level of a constitutional violation. The night light is for the plaintiff's and officer's safety.

5. The plumbing system has a minor design flaw which allows minimal back flush when conditions are exactly right, however, this does not rise to the level of a constitutional violation.

6. A new ventilation system was installed in 2010. There is a air intake and return air associated with each cell. Accordingly, the ventilation is inspected and approved by the State Fire Marshall.

7. While housed in the C2 housing unit, the plaintiff was provided recreation on the recreation yard between 8:30 to 10:30 a.m., 1:30 to 3:30 p.m., and 5:30 to dusk. Usually, the plaintiff may participate during all hours.

8. There is no level of high violence or psychological injury that allows plaintiff to state a claim regarding protective custody and mainline co-mingling of inmates.

9. Upon inspection, the fire marshal did not find the cabinet area unsafe or in need of any changes. Further, the plaintiff has not exhausted his administrative remedies regarding this

complaint.

      10. Every defendant is entitled to qualified immunity against the plaintiff's claims.

**C. <u>Cecelia Janiszewski's Motion to Dismiss Amended Complaint and Alternative Motion for Summary Judgment</u>**

In defendant Janiszewski's motion to dismiss and alternative motion for summary judgment, she argues the plaintiff has failed to set forth any specific allegation or conduct that would rise to the level of a constitutional or statutory violation. Because the plaintiff has failed to state a cause of action against the defendant, summary judgment should be granted. Furthermore, the defendant argues that she was not deliberately indifferent to any serious medical need of the plaintiff. Accordingly, the plaintiff's hernia was not a serious medical condition and he did suffer a significant physical or psychological injury. Even if the plaintiff's claims were valid, as a health care provider, the defendant is entitled to good faith qualified immunity.

**D. <u>The Plaintiff's Reply to the NCF Defendants' Motion to Dismiss</u>**

In his reply to the NCF Defendants' Motion to Dismiss, the plaintiff reiterates that the living conditions and facilities of the Northern Correctional Facility are unsanitary, dangerous, and in violation of the Eighth Amendment. Additionally, the plaintiff claims that the NCF Defendants' have "built up wall of punitive actions against inmates" to discourage continued litigation. The plaintiff asserts if the complaint would advance to discovery, his allegations will be sufficiently proven.

**E. <u>The Plaintiff's Reply to Cecelia Janiszewski's Motion to Dismiss Amended Complaint and Alternative Motion for Summary Judgment</u>**

In his reply to defendant Janiszewski's motion to dismiss and alternative motion for summary judgment, the plaintiff reiterates the original arguments and complaints present in the plaintiff's

amended complaint. The plaintiff argues that the defendant's response supported evidence that the plaintiff suffered unnecessary pain and suffering for a year and a half until plaintiff received surgery to correct an ailing hernia in March 2011. The plaintiff contends that the defendant was aware of the plaintiff's hernia and was grossly negligent in failing to address the medical issue.

**F. Cecelia Janiszewski's Reply to the Plaintiff's Reply to Defendant Cecelia Janiszewski's Motion to Dismiss Amended Complaint and Alternative Motion for Summary Judgment**

In her reply to the plaintiff, defendant Janiszewski argues that no health care provider was aware of the plaintiff's hernia until examined by a doctor in January 2011. Thereafter, the plaintiff was treated properly and received a surgery to correct the hernia on March 27, 2011. Further, the defendant again asserts that because the defendant was not deliberately indifferent to the plaintiff's medical needs, summary judgment should be granted.

### III. Standard of Review

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim

showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," (Id). (citations omitted), to one that is "plausible on its face," (Id). at 570, rather than merely "conceivable." (Id). Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. (Id).

**B. Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions

in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon , 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." (Id) "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 1986).

### IV. Analysis
**A. Prison Conditions**

In general, the Eighth Amendment prohibits "cruel and unusual punishment." Farmer v. Brennan, 511 U.S. 825 (1994). The cruel and unusual punishment clause of the Eighth Amendment applies to the States through the Due Process Clause of the Fourteenth Amendment to the United

States Constitution. See Wilson v. Seiter, 501 U.S. 294 (1991). To succeed on an Eighth Amendment "cruel and unusual punishment" claim, a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

It must be remembered that "the Constitution does not mandate comfortable prisons" and prisons "cannot be free of discomfort." Rhodes v. Chapman, 452 U.S. 337, 349 (1981). Therefore, a deprivation of a basic human need is "only those deprivations denying 'the minimal civilized measure of life's necessities,' are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

To act with a "sufficiently culpable state of mind," a prison official must not only know of the facts leading to the deprivation, but also know that deprivation would expose an inmate to a certain danger. See Oliver v. Powell, 250 F. Supp. 2d 593, 604 (E.D. Va. 2002); See also, DeBlasio v. Johnson, 128 F. Supp. 2d 315, 325 (E.D. Va. 2000). A constitutional violation can be shown if a prison official shows deliberate indifference to the inmate's health or safety. Farmer v. Brennan, 511 U.S. 825, 828 (1994).

**1. Dining Facility/Food**

In the plaintiff's amended complaint, he alleges the NCF Defendants were "all aware of the unsanitary conditions" of the Northern Correctional Facility's dining area and food preparation process. (Doc. 7, p. 9) The Eighth Amendment requires prisons to provide food that is not "an immediate danger to the health and well being of the inmates who consume it." Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir. 1983). However, as long as a sufficient diet is provided, prison food does not rise to the level of Eighth Amendment violation. Freeman v. Trudell, 497 F. Supp. 481, 482

(E.D. Mich. 1980); Lovern v. Cox, 374 F. Supp. 32, 35 (W.D. Va. 1974).

The plaintiff's claim that the food served in the Northern Correctional Facility is too high in cholesterol, leading to obesity and various other health problems, is insufficient because the plaintiff has failed to allege any immediate danger. O'Keefe v. Goord, 77 F. App'x 42, 44 (2d Cir. 2003). There is no evidence that any defendant in this complaint acted with a culpable state of mind. All food served in the Northern Correctional Facility met intake guidelines and were properly inspected. (Doc. 73-2) Because the plaintiff in this case makes no allegations about the sufficiency of the food, his claim does not rise to the level of a constitutional violation and should not proceed.

In regards to the plaintiff's complaint about the Northern Correctional Facility's dining hall, courts have permitted prisons to place dining halls on their tiers. Merriweather v. Sherwood, 518 F. Supp. 355, 359 (S.D.N.Y. 1981). Again, the plaintiff has failed to show that the placement of the Northern Correctional Facility's dining hall is sufficiently serious to state a claim under § 1983.

**2. Cell Night Light**

The plaintiff alleges the night light present in his cell disrupts his sleep and imposes "a constant state of psychological discomfort (sic)." (Doc 7, p. 12) Assuming the low-wattage night light[4] does, at times, interrupt the plaintiff's sleep, the plaintiff's claim still fails to allege an actual claim. Cell night lights are used, not as punishment, but for security purposes. A night light serves a functional purpose, as it allows officers to view the cell and monitor inmates' actions and safety. (Doc. 73-4) The functionality of a night light is a "routine discomfort [that] is part of the penalty that criminal offenders pay for their offenses against society." Strickler v. Waters, 989 F.2d 1375, 1380

---

[4] Night lights at the Northern Correctional Facility each contain a 5 watt bulb. If requested, prisoners are given an index card to minimize the light. (Doc. 73-4)

(4th Cir. 1993). Furthermore, the plaintiff was offered an index card to help minimize the light, a clear indication the Northern Correctional Facility staff was not deliberately indifferent.

### 3. Cell Plumbing

The plaintiff alleges when some toilets are flushed, the contents flow into an adjacent cell toilet until finally settling and draining appropriately. The plaintiff contends the NCF Defendants disregarded the plaintiff's concerns about sewage drainage and back flush problems in prison toilets. In their motion to dismiss, the defendants acknowledge an "unpleasant" "plumbing flaw" in the prison, (Doc. 73-1, p. 11) but maintain the plumbing error does not rise to the level of a constitutional violation. (Id)

The occasional error of toilets flushing improperly is not an appropriate claim under the Eight Amendment. Smith v. Copeland, 87 F.3d 265, 269 (8th Cir. 1996)(finding no constitutional violation when the plaintiff's cell toilet overflowed in his cell for four days). Here, there was no overflow, stagnation, or any other serious sewage issue that could be interpreted as "sufficiently serious," to qualify as a claim under the Eighth Amendment. Additionally, the West Virginia Health Department is aware of the plumbing issue and has advised the problem does not expose the inmates to any health risk. (Doc. 73-4, p. 2)

### 4. Cell Ventilation

The plaintiff alleges the cell ventilation system is inadequate and "[a]ll the defendants . . . are aware of the [v]entilation problem and have made no effort to correct the problem."[5] (Doc. 7, p. 14) The

---

[5] As proof of the system's inadequacy, the plaintiff attributes the ventilation system as the cause of a minor Scabies outbreak. (Doc. 7, p. 14) However, Scabies is spread by direct, skin-to-skin contact, and not via air circulation. See www.cdc.gov/parasites/scabies/. Further, the plaintiff makes no allegation that he personally contracted Scabies.

Constitution "does not guarantee a certain type of ventilation system or a certain rate of air exchange." Bolton v. Goord, 992 F. Supp. 604, 628 (S.D.N.Y. 1998). Furthermore, the Northern Correctional Facility installed a new ventilation system in 2010. (Doc. 73-1, p. 12) Since that time, the system has been inspected and approved by TAB Technologies Testing and Balancing as well as the West Virginia Office of Environmental Health Services. (Id) The defendant's were not deliberately indifferent to the plaintiff's health or safety nor has the plaintiff stated an actual harm from the ventilation system. Therefore, this claim should be dismissed.

**5. Passive Recreation**

The plaintiff alleges the defendants have denied him passive recreation while housed in the Northern Correctional Facility's C2 housing unit. The C2 housing unit does prohibit passive recreation, however inmates are afforded recreation time outside in the recreation yard.[6] In regards to prison policies, the Supreme Court has noted "the Constitution does not mandate comfortable prisons, and prisons . . . which house persons convicted of serious crimes, cannot be free of discomfort. Thus, these considerations properly are weighed by the legislature and prison administration rather than a court." Rhodes v. Chapman, 452 U.S. 337, 349 (1981) Concerning the prohibition of passive recreation in housing unit C2, the plaintiff has not stated an actual claim under the Eighth Amendment, thus the claim should be dismissed. Accordingly, the defendant's have not shown any deliberate indifference to the plaintiff and the recreation policy of the Northern Correctional Facility is a discretionary policy based upon the safety and practicalities of housing inmates.

---

[6] Recreation times at the Northern Correctional Facility are from 8:30 a.m to 10:30 a.m.; 1:30 p.m. to 3:30 p.m.; and 5:30 p.m. to dusk. (Doc. 73-10, p. 1)

**6. Protective Custody/Co-Mingling**

The defendant alleges the NCF Defendant's were negligent in housing general population inmates with "protective custody inmates."[7] (Doc. 7, p. 16) The plaintiff is fearful of an increased risk of violence. Typically, an inmate must show some physical harm to satisfy an Eighth Amendment claim. Doe v. Welborn, 110 F.3d 520, 524 (7th Cir. 1997)(finding psychological harm and deterioration while in protective custody for two months waiting for transfer to another facility resulting from living in constant fear of fellow prisoners, failed to establish compensable injuries under Eighth Amendment).

Here, the plaintiff has not alleged any physical injury from any other inmates while incarcerated at the Northern Correctional Facility. Because the plaintiff has failed to state a cognizable claim under § 1983, the claim should be dismissed.

**7. Chemical Cabinets**

The defendant alleges the NCF Defendant's were negligent in storing cleaning chemicals in a metal cabinet with no fans or ventilation system. However the plaintiff has failed to state a constitutional claim because the plaintiff has not alleged any harm towards himself nor has he alleged the defendant's possessed a culpable state a mind. Furthermore, all janitorial cabinets and closets are inspected by the Fire Marshall. (Doc. 73-4, p. 2) There has never been an incident harming the plaintiff or any inmate. Therefore, the claim should be dismissed.

**B. Medical Claim**

---

[7] The plaintiff is incorrect stating the Northern Correctional Facility is a protective custody facility. Two types of plaintiff's, (1) general population inmates and (2) special management inmates, are incarcerated at the Northern Correctional Facility. Special management inmates are inmates whom are housed at the Northern Correctional Facility to be kept safe from inmates in other facilities. (Doc. 73-12, p. 1)

The plaintiff contends that defendant Janiszewski and the NCF Defendants are liable under 42 U.S.C. § 1983 because the plaintiff's hernia was not adequately addressed. To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976).

A medical condition is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir.1990), *cert. denied*, 500 U.S. 956 (1991); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir.1987) *cert. denied,* 486 U.S. 1006 (1988).[8]

A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth 834 F.2d at 347. Thus, while failure to provide recommended elective knee surgery does not violate the Eighth Amendment, Green v. Manning, 692 F.Supp. 283 (S.D. Ala.1987), failure to perform elective surgery on an inmate serving a life sentence would result in permanent denial of medical treatment and would render the inmate's condition irreparable, thus violating the Eighth Amendment. Derrickson v. Keve, 390 F.Supp. 905, 907 (D.Del.1975). Further, prison officials must provide reasonably prompt access to elective surgery. West v. Keve, 541 F. Supp. 534 (D. Del. 1982)

---

[8] The following are examples of what does or does not constitute a serious injury. A rotator cuff injury is not a serious medical condition. Webb v. Prison Health Services, 1997 WL 298403 (D. Kansas 1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious. Veloz v. New York, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition. Brice v. Virginia Beach Correctional Center, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition. Browning v. Snead, 886 F. Supp. 547 (S.D. W. Va. 1995). And, arthritis is a serious medical condition because the condition causes chronic pain and affects the prisoner's daily activities. Finley v. Trent, 955 F. Supp. 642 (N.D. W.Va. 1997).

(Court found that unreasonable delay occurred when surgery was recommended in October 1974 but did not occur until March 11, 1996.)

The subjective component of a "cruel and unusual punishment" claim is satisfied by showing deliberate indifference by prison officials. Wilson, 501 U.S. at 303. "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). Basically, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial or nonexistent." Id. at 844.

**1. The NCF Defendants**

Liability under 42 U.S.C. § 1983 is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir.2001)(internal citation omitted). Thus, in order to establish liability under § 1983, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for a violation of a constitutional right under § 1983. Rizzo v. Good, 423 U.S. 362 (1976).

Although the plaintiff names each of the NCF Defendants as a defendant in this action, the plaintiff asserts no personal involvement on the part of any of the NCF Defendants in any alleged

violation of his constitutional rights. The plaintiff does not assert that the NCF Defendants ever treated him or if they were ever involved in any of the plaintiff's medical care for his hernia. Because the plaintiff makes no specific allegations of a violation of any constitutional right against the NCF Defendants, the plaintiff has failed to state a claim against the NCF Defendants and they should be dismissed as a defendant in this claim.

### 2. Cecelia Janiszewski[9]

To state a claim under the Eighth Amendment, plaintiff must show that defendants acted with deliberate indifference to serious medical needs of a prisoner. Estelle v. Gamble, 429 U.S. 97, 104 (1976). A cognizable claim under the Eighth Amendment is not raised when the allegations reflect a mere disagreement between the inmate and a physician over the inmate's proper medical care, unless exceptional circumstances are alleged. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

Assuming *arguendo* that the plaintiff's hernia would be considered "serious" under the language of § 1983 and the Eighth Amendment, the plaintiff's claim would still be unsuccessful because Janiszewski was not deliberately indifferent to the plaintiff's hernia. On December 7, 2009, the plaintiff transferred from Mt. Olive Correctional Center to the Northern Correctional Facility. (Doc. 74-1, p. 4) The same day, the plaintiff underwent a health screening where it was noted the plaintiff wore a hernia belt. (Id) On August 24, 2010 the plaintiff was seen by a contracted physician[10] who noted that plaintiff had a "grapefruit reducible hernia at his left groin." (Id at 5) On January 18, 2011, once it was determined the plaintiff's hernia was not reducible, the plaintiff was listed as a candidate

---

[9] According to Ms. Janiszewski's affidavit, (Doc 74-1) is an employee of PrimeCare Medical of West Virginia, Inc. ("PrimeCare Medical") and serves as the Health Services Administrator for the Northern Correctional Facility.

[10] The doctor was contracted through PrimeCare Medical.

for surgery. (Id) On January 31, 2011, the plaintiff was diagnosed with a left inguinal hernia, and after the plaintiff recovered from MRSA, the plaintiff was scheduled for pre-surgery clearance on February 15, 2011, with surgery arranged the very next day. (Id at 7) However, on the date of the pre-surgery clearance, the doctor cancelled surgery due to a discovery the plaintiff had atrial fibrillation. (Id) The doctor requested the surgery for hernia repair be postponed until the plaintiff's atrial fibrillation was cleared by a cardiologist. (Id) PrimeCare Medical granted the request. (Id) On March 16, 2011, the plaintiff was examined by a cardiologist for clearance for hernia surgery. (Id) Once the plaintiff was medically cleared, the plaintiff received an open left inguinal hernia repair on March 28, 2011. (Id at 9)

In this case, the plaintiff has failed to allege that defendant Janiszewski acted with deliberate indifference. Although the plaintiff alleges the defendants negligently failed to correct the plaintiff's hernia in an appropriate amount of time, a mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). No "exceptional circumstances" appear in this case. When the medical staff believed the plaintiff's hernia would not properly reduce, the plaintiff was then immediately scheduled for surgery. Once the plaintiff was scheduled for surgery, there was no purposeful action by Ms. Janiszewski to delay the plaintiff's medical procedure. Thus, because the plaintiff makes no specific allegations of a violation of any constitutional right against Ms. Janiszewski, the plaintiff has failed to state a claim against the defendant and his claim should be dismissed.

### V. Recommendation

For the reasons set forth above, the undersigned recommends that the NCF Defendants'

Motion to Dismiss (Doc. 73) be **GRANTED**, defendant Janiszewski's Motion to Dismiss and Alternate Motion for Summary Judgment (Doc. 74) be **GRANTED** and plaintiff's amended complaint (Doc. 7) be **DISMISSED** for failure to state a claim. Within fourteen (14) days after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable John Preston Bailey, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last know address as shown on the docket sheet. The Clerk of the Court is further directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

DATED: July 27, 2012

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE