```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

TERRY L. THOMAS,

    Plaintiff,

v.                                        Civil Action No. 5:11CV7
                                                                (STAMP)

LT. EDWARD LITTELL,
EVELYN SEIFERT,
KAREN PSZCZOLOWSKI,
GREGORY YAHNKA and
CECELIA JANISZEWSKI,

    Defendants.

**MEMORANDUM OPINION AND ORDER
AFFIRMING AND ADOPTING REPORT AND
RECOMMENDATION OF MAGISTRATE JUDGE
AND DISMISSING AMENDED COMPLAINT**

I.  Procedural History

On January 10, 2011, the pro se[1] plaintiff, Terry Thomas, initiated this action in this Court by filing a civil rights complaint under 42 U.S.C. § 1983. Pursuant to Local Rule of Prisoner Litigation Procedure 2, it was then referred to United States Magistrate Judge John S. Kaull for initial review and report and recommendation.

After the plaintiff filed an amended complaint in proper form, Magistrate Judge Kaull granted his motion to proceed without payment of fees. The magistrate judge also dismissed a second pro se plaintiff, Bobby Roddy, who had been added to the case when the plaintiff filed his amended complaint. The magistrate judge found

---

[1] "Pro se" describes a person who represents himself in a court proceeding without the assistance of a lawyer. Black's Law Dictionary 1341 (9th ed. 2009).

that multi-prisoner plaintiffs could not proceed together in forma pauperis.  Following this dismissal, the plaintiff filed a motion to amend his amended complaint to add new claims and defendants.

After review of the plaintiff's amended complaint and motion to amend his amended complaint, the magistrate judge entered a report and recommendation which recommended that this Court dismiss multiple claims and defendants, allow other claims and defendants to proceed, and deny the motion to amend, which this Court adopted in its entirety.  This Court directed the clerk to serve the remaining defendants on the remaining claims in the amended complaint.  Following service, defendants Lieutenant Edward Littell, Evelyn Seifert, Karen Pszczolowski and Gregory Yahnka ("the NCF defendants") filed a motion to dismiss, or in the alternative, motion for summary judgment.  Defendant Cecelia Janiszewski also filed a separate motion to dismiss, or in the alternative, motion for summary judgment.  Both of these motions were fully briefed.

The magistrate judge entered a second report and recommendation based upon the motions to dismiss, or in the alternative, motions for summary judgment, which recommended that this Court grant the motions and dismiss the plaintiff's amended complaint.  Magistrate Judge Kaull informed the parties that if they objected to any portion of the report and recommendation, they were required to file written objections within fourteen days after

being served with copies of the report. No objections have been received.

## II. Facts

The plaintiff is currently incarcerated at the Northern Correctional Facility in Moundsville, West Virginia ("NCF"). In his complaint, following this Court's previous partial dismissal of his amended complaint, nine claims of allegedly unsanitary and unconstitutional conditions at the Northern Correctional Facility remain. The claims are as follows:

1. The NCF has inadequate dining facilities, and the inmates are required to eat in the housing unit which is also used as the passive recreation area. The location of this eating area is close to the upper tier, and due to poor ventilation, dust and dirt falls onto inmates' food while they eat as a result of people walking on the upper tier.

2. Food is served in an unsanitary fashion. The trays are not tied down and food spills over the sides causing cross-contamination. The trays are not handled in a sanitary manner, causing them to get dirt and other contaminates on them and the food. The food is served at the incorrect temperatures because the food carts are old and unheated and the food sits too long before it is served, and the kitchen workers are not provided with proper clothing while preparing food and are forced to report to work even when they are sick.

3. The food served is nutritionally inadequate. Fresh fruits are not served, salads are wilted, and main courses are not served at proper temperatures. Further, the plaintiff maintains that "chicken scratch" is put into all sauces and the foods contain highly processed meats which are high in cholesterol.

4. Despite the policy that inmates cannot use televisions or cell lights between 12:00 a.m. and 6:00 a.m., "night lights" remain illuminated throughout that entire time. The plaintiff argues that this disrupts his deep sleep, which he contends is "torturous."

5. When an inmate flushes the toilet in his cell, there is a problem with back flush and sewage drainage such that the toilet is actually flushed into the cell next to that inmate's cell before draining.

6. The ventilation in the cells at NCF is insufficient and while air comes into the cells, there is insufficient "intake to remove stale air from the cells." This allegedly causes dust and dirt problems which are detrimental to the plaintiff's health.

7. The defendants have denied the plaintiff passive recreation while he has been housed in C2, which is a punitive segregation housing unit. The plaintiff argues that he has been placed in this unit due to a hernia which prevents him from going outside and from keeping a cell mate. However, he argues that although he is not housed here for punitive reasons, he is subject to the rules of the unit which prohibit passive recreation. He believes that because he is in C2 for medical reasons and has been

unable to obtain a single cell through the medical department, he should be exempt from the ban on passive recreation.

    8. General population inmates are placed together with protective custody inmates and the plaintiff believes that this presents a substantial risk of violence.

    9. Chemicals are stored in a mesh, metal cabinet with no ventilation, exhaust or intake fans. All types of cleaning products are kept in this cabinet, and mops, brooms and dust mops hang in the same cabinet with shower hoses, brooms and cleaning buckets.

    The plaintiff also raises a claim that his hernia has been inadequately addressed at NCF (Claim Ten). The defendants maintain in their motions to dismiss that all of the plaintiff's claims fail to demonstrate an Eighth Amendment violation related to cruel and unusual punishment. They argue that all of the facilities at NCF are constitutionally adequate, and that regardless of the conditions, the defendants are all entitled to qualified immunity. Defendant Janiszewski, who is an employee of PrimeCare Medical of West Virginia, Inc. and serves as the Health Services Administrator for the NCF, asserts that the plaintiff has failed to set forth any cause of action against her. She also states that she was not deliberately indifferent to any serious medical need of the plaintiff, and even if his claims were valid, she is entitled to good faith qualified immunity.

III. Applicable Law

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court must conduct a de novo review of any portion of the magistrate judge's recommendation to which objection is timely made. Because no objections were filed, all findings and recommendations will be upheld unless they are "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A).

IV. Discussion

A. Prison Conditions

The plaintiff asserts that the conditions that he names in his complaint amount to cruel and unusual punishment in violation of his Eighth and Fourteenth Amendment rights.[2] In order to survive summary judgment with regard to these claims, the plaintiff must provide sufficient evidence to create a genuine issue of material fact both that: (1) objectively, the deprivation of a basic human need was "sufficiently serious," and (2) subjectively, prison officials acted with a "sufficiently culpable state of mind." Wilson, 501 U.S. at 298. Prisons are not required to provide comfortable accommodations. Accordingly, deprivations of a basic human need that violate the Eighth Amendment are only those that deny "the minimal civilized measure of life's necessities." Id. Further, the "sufficiently culpable state of mind" required to hold

---

[2]The Eighth Amendment right against cruel and unusual punishment applies to the states through the Due Process Clause of the Fourteenth Amendment. See Wilson v. Seiter, 501 U.S. 294 (1991).

prison officials liable for an Eighth Amendment violation is only shown when there is sufficient evidence that the prison official not only knew of the existence of the facts or situations resulting in the deprivation, but also that he recognized that the deprivation would lead to certain harm to the inmate. See Oliver v. Powell, 250 F. Supp. 2d 593, 604 (E.D. Va. 2002).

1.  Claims One, Two, and Three: Dining Facilities/Food

This Court finds that the magistrate judge did not commit clear error in his assessment that the dining facilities and the food served at the NCF do not deprive the plaintiff of a basic human need, and thus do not amount to Eighth Amendment violations. Prison food can only rise to the level of an Eighth Amendment violation when the food served poses "an immediate danger to the health and well being of the inmates who consume it." Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir. 1983).

This Court agrees that the plaintiff has failed to allege that the food poses an immediate danger to inmates; rather, he asserts only that the food is high in cholesterol and leads to obesity. This claim is insufficient to satisfy the necessary showings for an Eighth Amendment violation. Further, as the magistrate judge finds, the simple fact that the NCF places its dining area on the tier does not constitute a constitutional violation. Such arrangements have been approved by courts in the past, and the plaintiff has failed to allege any danger that this arrangement causes for inmates which rises to the level of an Eighth Amendment

violation.  See Merriweather v. Sherwood, 518 F. Supp. 355, 359 (S.D.N.Y. 1981).

### 2. Claim Four: Cell Night Light

Further, this Court finds that the magistrate judge did not commit clear error in determining that the cell night lights serve a safety purpose and are not used for punitive reasons.  The magistrate judge also pointed out that inmates are given an index card to dim the 5 watt bulbs in their cell night lights if the light is bothersome so as to lessen the discomfort while nonetheless retaining the utility of the lighting.  This Court agrees with the magistrate judge that a dimmed 5 watt bulb with functional purpose during the night is merely a "routine discomfort" of prison life that is not an Eighth Amendment violation.  Strickler v. Waters, 989 F.2d 1375, 1380 (4th Cir. 1993).

### 3. Claim Five: Cell Plumbing

This Court also finds that Magistrate Judge Kaull was correct in concluding that the back flush problems in the cells at NCF do not rise to the level of an Eighth Amendment violation.  While the defendants acknowledge this problem and concede that it is "unpleasant;" as the magistrate judge cited, other courts have found much more serious plumbing problems to not rise to the level of a constitutional violation.  See Smith v. Copeland, 87 F.3d 265, 269 (8th Cir. 1996).  In this case, the plaintiff is not exposed to back-up into his cell, and the back flush does not stagnate.

8

Further, as Magistrate Judge Kaull notes, the West Virginia Health Department has advised that the back flush issue at NCF does not expose inmates to any health risk.

    4.    <u>Claim Six: Cell Ventilation</u>

The plaintiff claims that the cell ventilation is inadequate at NCF, and that the defendants are aware of this but have done nothing to correct it.  However, not only has the plaintiff failed to assert any actual harm that he has suffered as a result of the ventilation, but the NCF's new ventilation system, installed in 2010, has been inspected and approved by TAB Technologies Testing and Balancing, and by the West Virginia Office of Environmental Health Services.  Accordingly, the plaintiff has also failed to support his claim of Eighth Amendment violations as to Claim Six.

    5.    <u>Claim Seven: Deprivation of Passive Recreation</u>

It is not contested that the plaintiff, while housed in the C2 housing unit, was denied passive recreation, but that he was allowed outside recreation in the recreation yard multiple times each day.  While the plaintiff may be dissatisfied with this policy, the mere fact that he was not housed in the C2 unit for punitive reasons does not mean that the denial of passive recreation along with the other residents of that unit housed there for reasons other than medical need is a deprivation of the plaintiff's Eighth Amendment rights.  The magistrate judge did not commit clear error in concluding that the policies of the prison regarding safety and the housing of inmates are discretionary, and

9

because the plaintiff was not denied all recreation while on the C2 unit, recommending dismissal of Claim Seven.

      6.    <u>Claims Eight and Nine: Co-Mingling of Protective Custody Inmates with General Population</u>

Again, the plaintiff has failed to assert that he has suffered any injury as a result of any co-mingling of protective custody inmates with general population inmates or as a result of the state of the chemical cabinets. The magistrate judge was correct in finding that the plaintiff thus has failed to assert a cognizable § 1983 claim as to either of these assertions.

      7.    <u>Claim Ten: The Handling of Plaintiff's Hernia</u>

Finally, the plaintiff claims that all defendants to this case are liable for inadequate care of his hernia. In order to successfully assert this claim under 42 U.S.C. § 1982, the plaintiff must show that the defendants acted with <u>deliberate indifference</u> to his <u>serious medical needs</u>. <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976). This Court finds that the magistrate judge did not commit clear error in determining that the plaintiff failed to make such a showing against any of the defendants.

The magistrate judge determined, and this Court agrees, that a specific determination of whether the plaintiff's hernia constituted a serious medical need is unnecessary because the plaintiff has failed to show that any of the defendants acted with deliberate indifference to his condition. Deliberate indifference requires that a defendant know of the plaintiff's condition,

10

subjectively determine it to be serious, and then deliberately fail to adequately address it. Farmer v. Brennan, 511 U.S. 825, 837 (1994). Initially, with regard to the NCF defendants, the plaintiff has failed to allege any specific involvement with the treatment of his hernia. Accordingly, this claim must be dismissed against those defendants. See Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001) (all liability under § 1982 must be "based upon each defendant's own constitutional violations").

Further, the magistrate judge found that the claim must be dismissed against defendant Janiszewski as well, because all claims against her amount to the plaintiff's disagreement with his physician's course of care. The record clearly shows that the defendant's hernia was treated immediately at the time that it was discovered by medical staff; first conservatively, then with surgery when it was determined that conservative treatments were not yielding improvement. After surgery was scheduled, the plaintiff's surgery was performed at the earliest date that the plaintiff was medically able to undergo the surgery.[3] Simply because the plaintiff believes that surgery should have been performed earlier does not mean that the medical staff was deliberately indifferent to his hernia. Further, no purposeful action by Ms. Janiszewski to delay the plaintiff's surgery has been

---

[3]At the time that the plaintiff was diagnosed with left inguinal hernia, he was suffering from MRSA. After recovering from this ailment, the plaintiff's physician discovered that he suffered from atrial fibrillation. The surgery was postponed until the plaintiff was cleared by a cardiologist to undergo surgery.

11

alleged. Therefore, the magistrate judge did not err in finding that the plaintiff failed to present evidence of her deliberate indifference.

## V. Conclusion

For the reasons described above, the report and recommendation of the magistrate judge is AFFIRMED and ADOPTED in its entirety. Accordingly, the NCF defendants' motion to dismiss, or in the alternative, motion for summary judgment is GRANTED. Defendant Janiszewski's motion to dismiss, or in the alternative, motion for summary judgment is also GRANTED. It is ORDERED that this case be DISMISSED and STRICKEN from the active docket of this Court.

Finally, this Court finds that the plaintiff was properly advised by the magistrate judge that failure to timely object to the report and recommendation in this action would result in a waiver of appellate rights. Because the plaintiff has failed to object, he has waived his right to seek appellate review of this matter. See Wright v. Collins, 766 F.2d 841, 844-45 (4th Cir. 1985).

IT IS SO ORDERED.

The Clerk is directed to transmit a copy of this order to the pro se plaintiff by certified mail and to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:        October 17, 2012

<u>/s/ Frederick P. Stamp, Jr.</u>
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE
